IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| **RICKY LYNN LEWIS,** | § | |
| Petitioner, | § | |
| **v.** | § | Civil Action No. 5:05cv70 |
| **NATHANIEL QUARTERMAN,** | § | |
| **Director, Texas Departement of** | | |
| **Criminal justice, Correctional** | § | |
| **Institutions Division,** | | |
| | § | |
| Respondent. | . | |

## MEMORANDUM OPINION

Ricky Lynn Lewis ("Lewis"),  an inmate in the custody of the Texas Department of Criminal Justice, Institutional Division, filed an application for a writ of *habeas corpus* pursuant to 28 U.S.C. §2254.  Lewis challenged his death sentence imposed in the 241st Judicial District Court of Smith County, Texas in cause number 1-91-32, styled *The State of Texas v. Ricky Lynn Lewis.*  Having considered the circumstances alleged, the authorities cited and the evidence presented by the parties, as well as the other pleadings and the record in this case, the Court finds that Lewis' application is not well-taken and it will be denied.

**I. Background**

Lewis was convicted of capital murder and sentenced to death.  In June, 1996, the Texas Court of Criminal Appeals affirmed his conviction, but vacated his death sentence and remanded the

case back to the trial court for a new sentencing hearing. *Lewis v. State*, No. 71,887 (Tex. Crim. App. June19, 1996) (unpublished).  Following that hearing, Lewis was again sentenced to death, and in June, 1999, the Texas Court of Criminal Appeals affirmed his conviction and sentence. *Lewis v. State,* No. 71,887 ( Tex. Crim. App. June 23, 1999) (unpublished).  Lewis filed a petition for post-conviction relief, which was denied. *Ex parte Lewis,* No. 44,725-01 (Tex. Crim. App. April 19, 2000)(unpublished).

Lewis then filed an application for a writ of *habeas corpus* with this Court, which was denied. *Lewis v. Cockrell*, No. 5:01cv105, (EDTX June 20, 2002) (unpublished).  The United States Court of Appeals for the Fifth Circuit affirmed this Court's denial of relief, *Lewis v. Cockrell*, 02-40985 (5th Cir. January 22, 2003) (unpublished), and the Supreme Court of the United States refused to review the Fifth Circuit's decision. *Lewis v. Dretke*, 540 U.S. 841 (2003).

On June 20, 2002, the Supreme Court held that executing the mentally retarded violated the Eighth Amendment's prohibition against cruel and unusual punishment. *Atkins v. Virginia*, 536 U.S. 304 (2002).  In  June, 2003, Lewis filed a second petition for post-conviction relief in state court, claiming that he was mentally retarded.  In February, 2005, after conducting an evidentiary hearing, the state district court denied his petition, and in June, 2005, the Texas Court of Criminal Appeals adopted the trial court's findings of fact and conclusions of law.  *Ex Parte Lewis*, No. 44,725-02 ( Tex. Crim. App. June 29, 2005) ( unpublished).  On April 20, 2005, Lewis filed the present application for a writ of *habeas corpus*.

## II. Applicable law

a. Standard of review

28 U.S.C. § 2254 (d) provides that relief in *habeas corpus* may not be granted with respect

to any claim which was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was either (1) contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  Pure questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254 (d)(1), while pure questions of fact are reviewed under 28 U.S.C. § 2254 (d)(2). *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000), *cert. denied*, 532 U.S. 949 (2001).

28 U.S.C. §2254 (b) generally prohibits granting relief on claims not previously presented to the state courts.  The federal court will usually dismiss an application which contains unexhausted claims in order to allow the petitioner to present these claims in a successive petition to the state court.  *See Rose v. Lundy*, 455 U.S. 509, 520-22 (1982).  If it is clear that the state court will not review those claims, the federal court will also refuse to review them unless the applicant can establish either good cause for failing to present his claims, and that he would be prejudiced by not being given an opportunity to do so in the federal court, or that a fundamental miscarriage of justice would result from failing to review the claims.  *See Coleman v. Thompson,* 501 U.S. 722, 749-750 (1991); *Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir. 2001).

b. Substantive legal principles

The legal principles which apply to this case arise from *Atkins v. Virginia*, 536 U.S. 304 (2002).  In *Atkins*, the Supreme Court held that because a national consensus had recently emerged opposing executing mentally retarded offenders, the practice constitutes cruel and unusual punishment.  The Court noted, however, that not all offenders who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a

3

national consensus.  It left to the states the task of developing appropriate ways to enforce its prohibition.

The Texas legislature has not yet enacted any guidelines for determining mental retardation in the capital punishment context, but in *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004), the Texas Court of Criminal Appeals set forth interim guidelines for courts considering state post-conviction claims of mental retardation.   In *Briseno*, the court stated that it would apply either the definition of mental retardation promulgated by either the American Association of Mental Retardation (AAMR)[1] or the definition found in Texas Health and Safety Code § 591.003(13).  The AAMR definition utilizes a three part test:

> 1. Significantly subaverage general intellectual functioning (defined as an IQ score of about 70 or below)
>
> 2. accompanied by related limitations in adaptive functioning (defined as significant limitations in an individual's effectiveness in meeting the standards of maturation, learning, personal independence, and social responsibility that are expected for his or her age level and cultural group, as determined by clinical assessment and usually, standardized scales,)
>
> 3. the onset of which occurs before age 18.

The Texas Health and Safety Code definition is similar:

> Mental retardation means significantly subaverage general intellectual functioning that is concurrent with deficits in adaptive behavior and originates during the developmental period.   Adaptive behavior means the effectiveness with or degree to which a person meets the standards of personal independence and social responsibility expected of the person's age and cultural group.

### III. Analysis of Claim

The state court in this case found, *inter alia*, that Lewis had failed to prove by a

---

[1] On Jan. 1, 2007, the AAMR changed its name to the American Association on Intellectual and Developmental Disabilities (AAIDD).

4

preponderance of the evidence that he had significantly subaverage general intellectual functioning.[2] *See* finding of fact No. 27.  Because this is a finding of fact, not a mixed finding of fact and law,  *see Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006), the question for the Court is whether this finding was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

As stated above, significantly subaverage general intellectual functioning is defined as an IQ score of about 70 or below.  The evidence presented in the state court proceedings was that Lewis had taken several I.Q. tests over the years, with scores ranging from 67 to 104.  In preparation for the hearing in this case, Lewis took two I.Q. tests, and achieved a score of 59 on the first and 79 on the second.  The trial court found that the neuropsychologist who gave the first test, Dr. Stephen Martin, was biased because he did not review all of Lewis' records, and thus the score he reported was not credible.  *See* finding of fact V.7.  The trial court also found the testimony of Dr. Edward Gripon to be "fair, unbiased, reliable and worthy of weighty consideration."  See finding of fact No. IV. 2. E.14.   Dr. Gripon testified that in his opinion, Lewis' intellectual potential was more consistent with an I.Q. of 70 than an I.Q. of 59.  *See* findings of fact IV. 2. E. 5 and IV. 2. E. 11.

The trial count further found that Dr. Susana Rosin, who gave the second test, did review all of Lewis' records, and the I.Q. score of 79 she reported did not overstate Lewis' actual intellectual function.  See findings of fact  V. 8, V. 9 and V. 35.   Although Dr. Rosin admitted that she "did not exactly follow all the instructions" in giving Lewis the second test, *see* finding of fact IV. 2. A. 4., and although Dr. Richard Garnett testified that Dr. Rosin made errors in scoring the test and he

---

[2]   The State of Texas has held that the applicant bears the burden of establishing by a preponderance of the evidence each of the three elements of mental retardation.  *See Ex Parte Rodriguez*, 164 S.W. 3d 400, 405 (Tex. Crim. App. 2005).

(Garnett) would have rated Lewis' IQ at 75, the trial court found that because Dr. Garnett, like Dr. Martin, refused to review all of the documents in Lewis' file, Dr. Garnett was biased and the credibility of his opinions and evaluations was therefore diminished. *See* findings of fact V. 11 and V. 12.

It appears from the above evidence that the trial court would have had a basis for finding Lewis' I.Q. to be either 59, 70, 75 or 79.  Since both Lewis' first test score and Dr. Gripon's testimony support a finding that Lewis had an I.Q. of about 70 or below, while Lewis' second test score and Dr. Garnett's testimony support a finding that Lewis had an I.Q. of about 75 or above, the evidence on the issue of whether Lewis had significantly sub-average intellectual ability appears to have been in equipoise.  Accordingly, the Court cannot say that the state court's finding that Lewis did not establish by a preponderance of the evidence that his I.Q. was 70 or below was unreasonable, based upon the evidence presented in the state court proceedings.[3]

## IV. Conclusion

Because the Court finds that the state court's adjudication of the subaverage general intellectual functioning element of Lewis' mental retardation claim was not based upon an unreasonable determination of the facts in light of the evidence presented to the state court,  it is unnecessary for the Court to review the state court's adjudication of  the other two elements of his claim.  *See Clark,* 457 F.3d at 443-44.   The Court will deny Lewis' application for a writ of *habeas corpus*.  An order and judgment will be entered.

---

[3] Lewis has offered new evidence to this Court to support his claim, including, for example, an affidavit from the author of the test given by Dr. Rosin, stating that she did not follow the proper procedures in giving the test.  Such evidence may not be considered under 28 U.S.C. § 2254 (d)(2).

**SIGNED this 22nd day of June, 2007.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE