IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION


RICKEY LYNN LEWIS,                    §

       Petitioner                §

vs.                                   §                5:05cv70

                                      §

RICK THALER, Director, Texas          §
Department of Criminal Justice,
Correctional Institutions Division,   §

       Respondent

## MEMORANDUM OPINION

     This case comes before the Court on remand from the United States Court of Appeals for the Fifth Circuit. Petitioner, Rickey Lynn Lewis, appealed this Court's denial of his successive *habeas* claim under *Atkins v. Virginia*, 536 U.S. 304 (2002). The Court refused to consider an affidavit challenging the administration of an IQ test to Petitioner which was first offered in reply to the Director's response to Petitioner's successive *habeas writ*. The Court of Appeals determined that this Court was not prohibited from considering the affidavit and remanded the cause so that the affidavit could be considered in reviewing the state court's adjudication of Petitioner's mental retardation claim. Upon reconsideration of Petitioner's claim and after reviewing all of the evidence, this Court finds that Petitioner's claim is without merit and should be denied.

In April 1994, Petitioner was convicted of capital murder and sentenced to death. On direct appeal, the Texas Court of Criminal Appeals upheld Petitioner's conviction but remanded for a new punishment-phase hearing so that the trial court could apply the revised special issues. *Lewis v. Texas*, No. 71,887 (Tex.Crim.App. 19 Jun. 1996) (unpublished). On remand, Petitioner was again sentenced to death. The Texas Court of Criminal Appeals affirmed the case on direct appeal, *Lewis v. Texas*, No. 71,887 (Tex.Crim.App. 23 Jun. 1999) (unpublished), and Petitioner's state post-conviction request for relief was denied. *Ex parte Lewis*, No. 44,725-01 (Tex.Crim.App. 19 Apr. 2000) (unpublished). Petitioner then filed his original application for federal *habeas* relief which this Court denied in 2002. The Fifth Circuit affirmed this Court's decision.

Following the United States Supreme Court ruling in *Atkins*, Petitioner filed a successive *habeas* application in state court alleging that he was mentally retarded and, therefore, ineligible for execution. In July 2003, the Texas Court of Criminal Appeals stayed Petitioner's execution and remanded the cause to the state *habeas* trial court to consider Petitioner's *Atkins* claim. *Ex parte Lewis*, No. 44,725-02 (Tex.Crim.App. 24 Jul. 2003) (unpublished). In December 2004, the state *habeas* court conducted an evidentiary hearing on the issue of mental retardation. In February of 2005, the trial court made findings of fact and conclusions of law recommending that relief be denied. The Texas Court of Criminal Appeals agreed with the trial court's recommendation denying relief. In April 2005, Petitioner filed the application at issue here. The Director responded to Petitioner's application and Petitioner filed a reply. Petitioner supplemented his reply with an affidavit by Dr. Roid challenging the validity of testimony from State's witness Dr. Rosin. Dr. Rosin conducted an IQ examination of Petitioner that yielded a

2

score of 79 which falls outside the range of mental retardation. Dr. Roid authored the IQ test administered by Dr. Rosin and he claims that Dr. Rosin committed many procedural errors in administering the test. This Court determined that it would not consider Dr. Roid's affidavit because it was not presented in the state court proceeding, and ruled that, under the AEDPA, the state court decision finding that Petitioner failed to establish that he is mentally retarded was not unreasonable.

Petitioner was permitted to appeal this Court's decision to disregard Dr. Roid's affidavit. The Fifth Circuit, analyzing the issue under 28 U.S.C. § 2254(b), held that because Dr. Roid's affidavit supplements rather than fundamentally alters Petitioner's mental retardation claim, the evidence is exhausted and may be considered in reaching a decision in this case. Therefore, the Court will analyze the state court's decision on mental retardation in light of the additional evidence regarding Petitioner's IQ test administered by Dr. Rosin.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant *habeas* relief if a state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, " 28 U.S.C. § 2254 (d)(1), or if the relevant state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" § 2254 (d)(2). In the instant case, Petitioner argues that the state court's determination that he is not mentally retarded is unreasonable in light of the evidence. The AEDPA requires this Court to presume the correctness of the state court's factual findings unless Petitioner rebuts this presumption with "clear and convincing evidence." 28 U.S.C. § 2254 (e)(1), *Schriro v. Landrigan*, 550 U.S. 465,

473-74 (2007). Accordingly, the state court's determination that Petitioner is not mentally retarded is due deference unless Petitioner can demonstrate, by clear and convincing evidence, that he is mentally retarded.

The state *habeas* court conducted an evidentiary hearing on Petitioner's mental retardation claim. Both Petitioner and the State presented expert testimony, as well as other types of testimony, regarding Petitioner's mental status. Under Texas law, a petitioner must demonstrate that he has "(1) 'significantly subaverage' general intellectual functioning; (2) accompanied by 'related' limitations in adaptive functioning; (3) the onset of which occurs prior to the age of 18." *Ex parte Briseno*, 135 S.W.3d 1, 7 (Tex.Crim.App. 2004). The first factor, subaverage intellect, is typically established by looking at IQ tests such as the Wechsler Adult Intelligence Scale (WAIS) and finding a score of 70 or below. The state *habeas* court found that Petitioner did not prove, by a preponderance of the evidence, that he has significantly subaverage general intellectual functioning. The state court looked at the results of IQ tests, as well as several other factors, in determining that Petitioner failed to meet the first criteria under *Briseno*. The Court must decide whether Roid's affidavit critiquing the IQ test administered by Rosin constitutes clear and convincing evidence that the state court's decision finding that Petitioner was not mentally retarded was unreasonable. *See* 28 U.S.C. § 2254 (d)(2); § 2254 (e)(1).

Roid's affidavit identifies him as the author of the Stanford-Binet Intelligence Scales, Fifth Edition (SB5)- the test Rosin used to evaluate Petitioner's IQ. He also supervised the development and standardization of SB5, as well as authored the Examiner, Technical, and Interpretive manuals relating to the test. Roid's affidavit contains a detailed list of procedural errors committed by Rosin in administering the SB5 to Petitioner and concludes that the effects

of the procedural errors resulted in an IQ score as much as ten points higher than it would be if the test had been administered correctly. This would result in a score of 69 on Petitioner's IQ test, which falls within the range of mental retardation.

The trial court recognized that "IQ tests are not perfectly accurate due to variations in test performance, examiner's behavior and other factors." (FF and CL V1) The court noted that Petitioner has IQ scores ranging from 59 to 104. Dr. Stephen Martin measured Petitioner's IQ a 59. However, because Dr. Martin refused to review all of Petitioner's records, the trial court found him to be biased , which "diminishes his credibility in his opinions and evaluations" of Petitioner. Dr. Rosin, on the other hand, reviewed all of the relevant documents and scored Petitioner with an IQ of 79. Dr. Rosin's evaluation of Petitioner was re-scored by Dr. Garnett, who opined that an IQ score of 75 was more accurate. Again, the trial court found that because Dr. Garnett failed to review all of the information available to him in making an assessment of mental retardation, he was biased which "diminishes him credibility in his opinions and evaluations." (FF and CL 11 & 12). The trial court specifically stated that "[n]o witness or evidence definitively diagnosed [Petitioner] as mentally retarded."

Thereafter, the state court went through a litany of evidence impacting its determination on subaverage general intellectual functioning. The court was persuaded that evidence other than IQ scores supported its conclusion that Petitioner was not mentally retarded. This analysis is consistent with *Ex parte Briseno*, 135 S.W.3d 1 (Tex.Crim.App. 2004), the Texas case setting forth the standard by which courts evaluate mental retardation. The Fifth Circuit has stated that there is "no binding authority that requires an IQ test specifically, that is, entirely alone, at the core, or as any singular threshold, to provide the basis for a finding of mental retardation."

*Morris v. Dretke*, 413 F.3d 484, 497 (5th Cir. 2005).

The state court noted that Petitioner was in regular education classes until the 1972-1973 school year, and then he was placed in special education classes at the St. Louis School in Tyler, Texas. This placement occurred when Petitioner was ten years old and just after he shot his father. While witnesses testified that Petitioner could have been placed in special education classes due to a low IQ or being diagnosed as mentally retarded, there was no evidence any IQ testing was conducted, that an IQ lower than 75 was reported in his school records, or that anyone diagnosed Petitioner as mentally retarded. It was noted that during the years Petitioner was at the St. Louis School, the school system would place children at that facility for a variety of reasons including mental retardation, language learning disabled (LLD), or emotional issues. In 1975, Petitioner was tested and designated as LLD, removed from special education classes, and attended regular school until he dropped out after his freshman year of high school. Being labeled LLD indicates that Petitioner had tested with an IQ of higher than 70 in 1975-1976.

Petitioner has an extensive criminal history involving offenses which required planning and deliberate execution. None of Petitioner's medical/mental health reviews or incarceration records contain a diagnosis of mental retardation. Petitioner's incarceration records do contain documents which include legal argument, coherent complaints, requests for relief and medical treatment, and visitation scheduling requests. If Petitioner received help preparing the documents in his records, the scope, volume and time span indicate that he did much of the work on his own. Petitioner can read and write and has an academic record of about third grade.

Petitioner filed a *pro se* 1983 Civil Rights Action against the Smith County Sheriff. In that case, Petitioner filed motions which were responsive to the Respondent's pleadings. Petitioner appeared *pro se* before a federal magistrate judge who commented that Petitioner was doing a good job representing himself. During his trial for the capital murder, Petitioner was able to understand the proceedings and converse intelligently with his trial attorney.

Based on the foregoing evidence, the trial court found that Petitioner failed to prove that his true IQ test score was lower than 75 and that the score of 79 does not overstate Petitioner's intellectual function. This Court's review of the evidence included in the findings of fact and conclusions of law in support of the state court's opinion that Petitioner was not mentally retarded leads the Court to conclude that the trial court's decision was reasonable. Dr. Roid's affidavit does not amount to clear and convincing evidence such that it can rebut the trial court's determination that Petitioner is not mentally retarded. *See Moore v. Quarterman*, 517 F.3d 781, 783 (5th Cir.), *cert. denied*, 129 S.Ct. 81 (2008) (court's decision on mental retardation presumed correct unless controverted by clear and convincing evidence).

Having found Petitioner's *Atkins* claim to be without merit, his application for a writ of *habeas corpus* will be DENIED. An order and judgment will be entered.

**SIGNED this 19th day of October, 2010.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE